The next matter, number 162451, Victor Sepulveda-Vargas v. Caribbean Restaurants, LLC. Good morning, your honors. My name is Juan Manuel Frontera. I represent the appellant. I would like to reserve two minutes for the appellant. Yes. May I please sit quickly? The district court in this case dismissed my client's Americans with Disabilities claim based basically at one point his discrimination claim by finding that my client was not a qualified individual under the ADA, under the Americans with Disabilities Act. And that determination was made because the court found that the essential job function, it was an essential job function of my client to work rotating shifts. Okay? Now, the burden of proof of establishing what is an essential job function sits on the employer, not on the employee. And as the court was discussing, and it's discussed at summary judgment stage, all inferences should be drawn in favor of my client as to whether rotating shifts is an essential job function or not. In this case, the court bases the determination in a prior case of the first circuit luring, the case of luring, that analyzed a ward, a maternity ward in a hospital that had specific, in that case, the employer established clearly that that maternity ward required 24-7 nurses that was, it was, hiring nurses was very difficult. It was very difficult for them and they needed all nurses to work 24-7 or be in rotating shifts. So the analysis of what is an essential job function requires a very specific factual issue. And it must be presented to the court by the employer to establish that it's an essential job function, that those requirements are met, those factual requirements. In this case, the record is devoid of a specific requirement or specific evidence that establishes that rotating shifts for assistant managers at Burger King restaurants are an essential job function for the assistant manager. The evidence provided in this case is a job application where, in a job application where at no point in that job application establishes that rotating shift for that assistant manager position is an essential job function. A newspaper ad without a date, we don't know what date it is. Is this after my client's hiring or after my client's work there? And it doesn't state that rotating shifts is essential job functions. It only states that available, that assistant managers should be available to work rotating shifts. And in addition, you said you have to have a car in good condition, you have to have initiative, you have to be dynamic, have leadership. So it doesn't state that rotating shifts for that position is an essential job function. Counsel, excuse me. Yes. The standard job record indicates that the employer said that there are, I think, perhaps as many as 700 assistant managers. They're all subject to this rotating shift requirement that if your client was excused from that requirement, it would be unfair to others who would have to assume that they explain why these rotating shifts are important to this particular kind of business. Well, the district court cites all of that, but it seems like your client presented virtually nothing to dispute that those explanations as to why these rotating shifts are important. I think when pressed, he couldn't really identify any other assistant managers who had the benefit of a fixed shift. So what did your client offer to create a genuine issue of fact as to whether this rotating shift requirement was not essential? Well, Your Honor, specifically, my client requested this reasonable accommodation of working a fixed shift by himself, then by a specific letter from the state insurance firm in Puerto Rico, then by two different attorneys requiring the company to grant him the reasonable accommodation of a fixed shift after those four requests that in the span of four months, the company made an analysis and the human resources manager in the deposition admitted that he granted the requested accommodation because he believed the ADA required him to grant it. We're not talking like in the case of citing from the 732 in Phelps that an employer talks to an employee and said, well, I know you are not entitled to the reasonable accommodation, but I'm going to grant it anyway. We're talking about different facts. We're talking about an employee that has to specifically request the reasonable accommodation. The company makes a reasonable analysis and determines the ADA. The analysis they made apparently was a legal analysis. They thought they were required to make this accommodation. They could have made that legal judgment still believing that the rotating shifts were an essential part of the job, so they may have made a judgment that the law required more of them than the law in fact required. Why does that legal judgment in any way impair their position that these rotating shifts are an essential part of the job? Because they would not have been obliged under the law if the rotating shifts were in fact essential to their functions. But the human resources manager stated clearly that it was his belief that he was required by the law. And we're talking about a human resources manager knowledgeable about the law. We're talking about a human resources manager that takes that decision after two attorneys have requested the reasonable accommodation and stating to the company, we're going to file suit if you don't grant the reasonable accommodation. So we can infer that at that point in time the good faith belief of the employer was that my client was a qualified individual under the law and it required the reasonable accommodation given. And the reasonable accommodation of a fixed shift was given to my client, and he, although he had to specifically make a lot of specific and battle to preserve his reasonable accommodation given to him through the challenge of the company, it was given to him at the final time. So I think that employers is like having a chameleonic defense in this case. We argue there. Can I finish already? Yes, of course. We argue. We give him the reasonable accommodation because we believe he is required, the law requires us to give him. And then in litigation we go back and then we say, no, this is rotating shifts are essential job functions and present very poor evidence in the record that in fact that is a fundamental job functions for assistance managers. Judges, additional questions? Just very quickly, if I could. Isn't there a suggestion in the record that the company understood that when they offered him a fixed shift that this was only going to be for a limited or temporary period of time? Is that a matter of dispute as to whether they understood it was to be temporary or permanent? That is disputed, Your Honor. The record is disputed upon that. All right. Thank you.  Good morning. May it please the Court. This is Attorney Alberto Bayuth on behalf of the Appellee Caribbean Restaurants LLC. Your Honors, in this case Caribbean Restaurants complied with its burden of proof of presenting sufficient evidence to show that the rotating shifts were in fact an essential function of Sepulveda's position as an assistant manager at Caribbean Restaurants. As the record shows, in this case, there is evidence as to not only with regards to Caribbean Restaurants' understanding and belief that that function in particular was essential, and as the First Circuit has held, that consideration has to be given substantial weight. In addition to that, that goes in hand with evidence on the record, the testimony given by the human resources manager, Mr. Marrero, stating that all managers at Caribbean Restaurants are required to rotate at Caribbean Restaurants because of the context of the restaurant industry, since it is important to relieve other managers, to also help them out taking scheduled vacations, and those sort of things. Most importantly, the record shows that Sepulveda concedes that rotating shifts are in fact a requirement or part of its functions as an assistant manager. Also, with regards to the job application that was presented to the District Court, the job application does state that the assistant managers are required to work 24 hours a day, seven days a week, at different restaurants and on different shifts. I'm having some trouble with the fact that they advised him up front that it would be required. How that translates into supporting that it is in fact an essential function? Well, that goes in hand with the job application. By looking at the job application, the job application points out that one of those specific requirements is the rotating shifts. It doesn't mention, compared to the job application, the other functions or other requirements for that position, but it emphasizes that the employee has to be available to work rotating shifts, and that he also has to be able to work 24 hours a day, seven days a week. So, up front, Mr. Sepulveda, as well as the other managers at Caribbean Restaurants, know for a fact that that is an essential function. Also, there is no evidence on the record that shows that there were other managers at Caribbean Restaurants that were excused from having to rotate shifts. So, based on that fact, the court probably concluded that rotating shifts were in fact an essential function. Also, there is no evidence on the record that a claim does not point to any case law finding that an employer is required, as those indicate, that in the job application, an employer is required to use the taxative words that a function is essential. So, we are not aware of any case law from this circuit or any of the other sister courts on that point. Also, there is no case cited by plaintiffs in their brief that requires also finding that an employer concedes to having granted a temporary accommodation, as in this case, as to whether or not a particular function is not essential. Also, with regards to plaintiffs' contention regarding the First Circuit's holding in Loring, that's, in our eyes in this case, you have to determine whether or not the circumstances are the same, but not only that, also, it's the context and the type of industry that is involved. Naturally, the restaurant industry has some requirements or some particularities that are different for a maternity ward. So, this case cannot be just squarely, you know, boxed in into the court's holding in Loring just to find that the same circumstances were not present, given that there are differences in the way that, you know, the necessities of both businesses. Also, with regards to the rotating shifts, and most importantly, the plaintiff was not able to show that he was able to comply with his essential functions with or without reasonable accommodation. So, there is no dispute that after requesting the accommodation, the company gave that accommodation to him until he voluntarily resigned in October 2013 after taking a six-month leave of absence. Also, with regards to whether or not plaintiffs' position as to if there was any dispute that, you know, whether or not the accommodation was going to be temporary, if we go to the record, and specifically there is evidence on the record in Appendix Volume 1, pages 330 and 332, there are email communications between the several staff from the Human Resources Department where they're asking internally that the importance of knowing whether or not the, how long was the accommodation was going to last. And also, the court acknowledged that particular point. So, there's no evidence on the record that Caribbean residents ever intended to, you know, exempt Mr. Zabuglia from having to rotate shifts at Caribbean restaurants. Counsel, I wonder if you would just say a word about the retaliation claim. I mean, it's a big part of Appellant's brief, although he hasn't mentioned it on appeal. It gives the impression that Mr. Salvas, who had never reconciled to this fixed shift accommodation, was very, very hard on your client, belittled him, conveyed his displeasure with the appellant to other employees who also belittled him. And this is an individual who's already vulnerable because of the problem he's experienced carrying out the work in the company. On this record, even if he was not a qualified individual under the ADA, why isn't there at least enough here to say that the retaliation claim should go forward? Well, as to the retaliation claim, Your Honor, there is no evidence on the record that, with regards to the particular incidents that Mr. Zabuglia addressed in his opposition to summary judgment and that were also brought up to this court in his appeal, there is no evidence, for instance, with regards to any specifics surrounding in what way or form did Mr. Salvas transmit his disbelief regarding Mr. Zabuglia's condition to other employees at Caribbean restaurants. Also, this court pointed out that most of Zabuglia's allegations were based on hearsay testimony, and based on that, it was not sufficient to withstand granting summary judgment or making assumptions or trying to make improbable inferences as to in what way or form did Mr. Salvas transmit his disbelief of Mr. Zabuglia's condition. Also, it should be noted that this court has settled that in the case of – a second. What about the communication between CELSO and Salvas when the incident occurred with the skin eruption? Excuse me, Your Honor, can you repeat that question? You said that there had not been any communication to other employees, but there was one incident that appellant cited between CELSO, C-E-L-S-O, and Salvas when there was some kind of disbelief that he had a skin eruption that resulted in the crybaby label being placed on him after that accident? Yeah, so that particular incident, that was another supervisor that was not Salvas, and there's no evidence on the record that Mr. Salvas' medical condition, which was not apparently based on the evidence on the record, was related to his disability, his request for reasonable accommodation, or any other of his protected conduct, which he engaged while working at Caribbean restaurants, Your Honor. And it's also – we have to note that – Doesn't that go to the issue of the hospital work environment points? Your Honor, I don't believe so, since in the span of two years, there are only six – a total of six incidents. And so based on the First Circuit's case law, even if those incidents are considered jointly, they're not sufficiently severe pervasive to make a finding that he was subjected to a hospital work environment in retaliation to any of his protected conduct under the ADA.  Additional questions, judges? No, I'm fine, thank you. Thank you. Thanks. Thank you. Specifically addressing the retaliation harassment claim, the record is clear that Mr. Salvas' own supervisors described him in the following manner. Mr. Salvas is a strong man who resisted Mr. Sepulveda's request for accommodation. And even when their supervisors, Salvas' supervisors, required him to grant him the reasonable accommodation, his body language reflected that he was not in agreement with the Human Resources Directive. And from then on, prior to granting the reasonable accommodation, when my client asked him for the reasonable accommodation verbally, and after my client believed that Salvas was not honoring the reasonable accommodation agreement, Mr. Salvas scolded my client after he went to Human Resources directly with the State Insurance Fund letter requiring the specific accommodation. And from then on, from then on, my client suffered from Mr. Salvas' accusations that he did not believe that my client was really emotional, had emotional issues because he had been assaulted more than 20 times and he was well. That was something that Salvas told my client. And the Celso incident, Celso was talking with Salvas through the phone and had my client in front of him, and Celso was telling Salvas, look, Salvas, he is really sick. He lowered his back before me and I can see his skin. He is really sick. So and we have addressed the specific instances in which my client suffered the harassment from Salvas. So even if my client, if this court was going to conclude that my client is not a qualified individual, his retaliatory harassment claim still leaves and this court determination should be revoked and this case go before a jury. All right. If there are no other questions, thank you.